763 N.W.2d 717 (2009)
277 Neb. 586
In re INTEREST OF D.V., alleged to be a dangerous sex offender.
D.V., Appellant,
v.
Mental Health Board of the Fourth Judicial District, Appellee.
No. S-08-446.
Supreme Court of Nebraska.
April 10, 2009.
*718 Thomas C. Riley, Douglas County Public Defender, and Sean M. Conway for appellant.
Michael W. Jensen, Deputy Douglas County Attorney, for appellee.
*719 HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

NATURE OF CASE
D.V. was convicted in 2002 of first degree sexual assault on a child. In October 2007, a petition was filed asking that he be found to be a dangerous sex offender pursuant to the Sex Offender Commitment Act (SOCA), Neb.Rev.Stat. §§ 71-1201 to 71-1226 (Cum. Supp. 2008). The Mental Health Board of the Fourth Judicial District (Board) found him to be a dangerous sex offender and ordered him committed to the Nebraska Department of Health and Human Services for inpatient sex offender treatment. The Douglas County District Court affirmed the commitment, and D.V. appeals.

SCOPE OF REVIEW
[1] The district court reviews the determination of a mental health board de novo on the record. In re Interest of O.S., 277 Neb. 577, 763 N.W.2d 723, 2009 WL 961159 (2009); In re Interest of J.R., 277 Neb. 362, 762 N.W.2d 305 (2009). In reviewing a district court's judgment, an appellate court will affirm the judgment unless it finds, as a matter of law, that clear and convincing evidence does not support the judgment. In re Interest of O.S., supra.

FACTS
The victim of D.V.'s sexual assault was the 4-year-old daughter of his half sister. D.V. was sentenced to a term of 6 to 10 years in prison. On October 12, 2007, a petition was filed pursuant to SOCA, alleging that D.V. was a dangerous sex offender as defined by Neb.Rev.Stat. § 83-174.01 (Reissue 2008) and that inpatient hospitalization was the least restrictive treatment available.
At a hearing before the Board, Mark Weilage, Ph.D., assistant behavioral health administrator for mental health for the Nebraska Department of Correctional Services, testified and a psychological evaluation of D.V. completed by Weilage was received into evidence. Weilage reported that D.V. had refused to be screened for the inpatient sex offender program and that he had not completed any mental health programming during his incarceration. D.V. denied that he committed the sexual assault for which he was incarcerated, but he admitted that there had been several prior instances in which he had fondled the genitals or breasts of a female younger than himself.
Weilage administered to D.V. the "Static-99" instrument, which is used to estimate the risk of sexual recidivism among sex offenders. D.V.'s score of 3 placed him in the low-moderate risk category for committing a future sex offense. Of individuals in a reference group who had a score of 3 on the Static-99, 12 percent sexually reoffended within 5 years and 19 percent reoffended in 15 years. On another measure, the "Stable 2000," D.V. fell in the high risk range with a score of 10 out of 12 for dynamic risk factors.
Weilage stated that D.V. showed evidence of intimacy deficits, some sexual preoccupations, attitudes supportive of sexual assault, lack of treatment involvement, negativity, and a general lack of concern for others. On the "Psychopathy Checklist: Screening Version," a 12-item scale designed to assess an individual's demonstration of behaviors consistent with psychopathy, D.V. scored 20 out of 24, which placed him at the 89.9 percentile rank. According to Weilage, individuals with a total score of 18 or more are "considered *720 likely psychopathic and further evaluation is recommended." Of concern to Weilage were D.V.'s "superficiality, his deceitfulness, his lack of remorse and empathy, and the fact that he does not accept responsibility for his actions."
Weilage stated that D.V. had a long history of sexually deviant behavior, a longstanding interest in younger females, and a significant preoccupation with sex in general. D.V. "would appear to meet criteria for pedophilia based on his past behavior, but his sexual deviance and dynamic risk factors go beyond that relatively simple diagnosis." Weilage also said the presence of a personality disorder negatively impacted D.V.'s ability to manage his sexual deviance.
Weilage's professional opinion was that D.V. meets the criteria of § 83-174.01 to be classified as a dangerous sex offender. He had been convicted of one sex offense and had an "Axis I" mental health diagnosis of pedophilia, which would increase his likelihood of engaging in repeat acts of sexual violence. D.V. has a personality disorder and dynamic risk factors that increase his overall risk for problematic behaviors in the future, including problematic sexual behaviors. Weilage stated that D.V. has "little awareness of how to begin to mitigate his risk for re-offense." D.V. does not have a functional relapse prevention plan; a specific, stable, and supportive aftercare plan; or an established treatment plan with a community treatment provider. Weilage reported that D.V. "does not see the need for any type of sex offender treatment" and should be considered an untreated sex offender. D.V.'s static actuarial assessment places him in the low-moderate risk category, but the assessment did not account for the presence of pedophilia, a personality disorder, and "significant dynamic risk factors which significantly increase his risk for sexual reoffense."
Weilage testified that D.V. is not a candidate for outpatient treatment. D.V. would need a minimum of "a couple years [of inpatient treatment], if he was able to fully engage in the treatment and take advantage of what they had to offer." Weilage stated that D.V. had not shown remorse for his behavior, which is necessary to start treatment. Weilage stated, based on his evaluation and knowledge of D.V., that D.V. is a likely risk to reoffend if not provided treatment as an inpatient.
After a hearing, the Board found by clear and convincing evidence that D.V. is a dangerous sex offender as defined by § 83-174.01 and that neither voluntary hospitalization nor other less restrictive treatment is appropriate. The Board ordered D.V. placed in the custody of the Department of Health and Human Services for inpatient sex offender treatment.
D.V. appealed the Board's determination to the Douglas County District Court, claiming that SOCA is unconstitutional; that the Board erred in admitting the record of D.V.'s 2002 conviction, which contained hearsay evidence; and that the Board erred in finding there was clear and convincing evidence that D.V. was a dangerous sex offender and that the treatment plan was the least restrictive alternative.
The district court found SOCA to be constitutional. The court declined to consider the error concerning the admission of evidence, because it was not assigned and argued in D.V.'s brief. The court found clear and convincing evidence to support the Board's finding that D.V. is a dangerous sex offender. The court also found clear and convincing evidence to support the Board's finding that inpatient treatment was the least restrictive and was the most appropriate for D.V. The court affirmed the Board's decision. D.V. appealed, *721 and we granted his petition to bypass the Nebraska Court of Appeals.

ASSIGNMENTS OF ERROR
On appeal, D.V. challenges the constitutionality of SOCA. He argues that the law violates double jeopardy and equal protection and is an impermissible ex post facto law. He also claims the Board erred in finding that he is a dangerous sex offender as defined by § 83-174.01 and in finding that neither voluntary hospitalization nor other less restrictive treatment was available and sufficient under § 71-1209.

ANALYSIS

CONSTITUTIONAL CLAIMS
[2] D.V. argues that SOCA is unconstitutional as an ex post facto law, as a violation of the Double Jeopardy Clause, and as a violation of his right to equal protection. We recently addressed these issues in In re Interest of J.R., 277 Neb. 362, 762 N.W.2d 305 (2009). We concluded that SOCA does not violate the Ex Post Facto Clause, the Double Jeopardy Clause, or the Equal Protection Clause. Because In re Interest of J.R. controls our decision on these issues, we proceed to consider the remaining assignments of error.

CLEAR AND CONVINCING EVIDENCE
Section 83-174.01(1) defines a "[d]angerous sex offender" as
(a) a person who suffers from a mental illness which makes the person likely to engage in repeat acts of sexual violence, who has been convicted of one or more sex offenses, and who is substantially unable to control his or her criminal behavior or (b) a person with a personality disorder which makes the person likely to engage in repeat acts of sexual violence, who has been convicted of two or more sex offenses, and who is substantially unable to control his or her criminal behavior.
The statute provides additional definitions. "Likely to engage in repeat acts of sexual violence means the person's propensity to commit sex offenses resulting in serious harm to others is of such a degree as to pose a menace to the health and safety of the public." § 83-174.01(2). A "[p]erson who suffers from a mental illness" is "an individual who has a mental illness as defined in section 71-907." § 83-174.01(3). A person with a personality disorder is one who has been diagnosed as such. § 83-174.01(4). "Substantially unable to control his or her criminal behavior" is defined as "having serious difficulty in controlling or resisting the desire or urge to commit sex offenses." § 83-174.01(6).
[4] D.V. claims the Board erred in concluding that he is a dangerous sex offender, because there was insufficient evidence to conclude that he suffers from a mental illness which makes him likely to violently reoffend in a sexual manner or to be unable to control his criminal behavior. As we noted in In re Interest of J.R., 277 Neb. at 386, 762 N.W.2d at 325, "[t]he key to confinement of a mentally ill person lies in finding that the person is dangerous and that, absent confinement, the mentally ill person is likely to engage in particular acts which will result in substantial harm to himself or others."
D.V. argues that the State cannot prove his dangerousness to others without evidence of a recent act. In In re Interest of J.R., we reviewed a similar argument. We noted that SOCA does not mention whether a recent act is necessary to reach a finding of dangerousness. Without deciding whether the recent act requirement must be fulfilled, we found that the State demonstrated that J.R. was a dangerous sex offender.
*722 However, in In re Interest of O.S., 277 Neb. 577, 763 N.W.2d 723 (2009), we stated that neither due process principles nor SOCA requires the State to prove a recent act probative of a sex offender's dangerousness. Weilage determined that D.V. is a pedophile, suffers from alcohol dependence, and has a personality disorder. D.V. did not take part in any treatment programs while incarcerated and, in fact, refused to be screened for the inpatient sex offender program. D.V. refused to accept responsibility for the sexual assault for which he was incarcerated, although he told Weilage of several other instances when he was a teenager in which he fondled the genitals of his 6- or 7-year-old sister and fondled the breasts of his 13-year-old sister and his sister's friend.
In addition, D.V. argues that there is no evidence other than his conviction and his admissions to show he is unable to control his impulses and that he fell within the low-moderate range on the Static-99 test, which measures the probability of reoffending. However, Weilage reported that D.V. was in the high risk range on another instrument that measured risk factors. There is clear and convincing evidence to find that D.V. is a dangerous sex offender.

APPROPRIATE TREATMENT
[5] Finally, D.V. claims the Board erred in finding that neither voluntary hospitalization nor other less restrictive treatment alternatives were available. D.V. argues that Weilage did not explore any outpatient treatment alternatives for D.V.
Weilage determined that D.V. was not a candidate for outpatient treatment and that he would need a minimum of 2 years of inpatient treatment. Weilage stated that D.V. would benefit from inpatient treatment only if he "fully engaged" in it. D.V.'s failure to demonstrate remorse for his behavior would be a hindrance for him in benefiting from treatment. Weilage said he believed D.V. was at risk to reoffend if he did not receive inpatient treatment.
D.V. did not take part in any mental health treatment while incarcerated. He did not agree to be screened for the inpatient sex offender program available through the Department of Correctional Services. There was clear and convincing evidence to support the Board's finding that the least restrictive alternative for D.V. is inpatient treatment.

CONCLUSION
In In re Interest of J.R., 277 Neb. 362, 762 N.W.2d 305 (2009), we concluded that SOCA is not an ex post facto law and does not violate either double jeopardy or equal protection. We conclude that the Board's finding that D.V. is a dangerous sex offender is supported by clear and convincing evidence. We also find that inpatient treatment is the least restrictive alternative for D.V.
The district court affirmed the decision of the Board. In reviewing a district court's judgment, an appellate court will affirm the judgment unless it finds, as a matter of law, that clear and convincing evidence does not support the judgment. In re Interest of O.S., 277 Neb. 577, 763 N.W.2d 723 (2009). The district court's judgment was supported by clear and convincing evidence, and it is affirmed.
AFFIRMED.