763 N.W.2d 723 (2009)
277 Neb. 577
In re INTEREST OF O.S., alleged to be a dangerous sex offender.
O.S., Appellant,
v.
Mental Health Board of the Fourth Judicial District, Appellee.
No. S-08-405.
Supreme Court of Nebraska.
April 10, 2009.
*725 Thomas C. Riley, Douglas County Public Defender, and Sean M. Conway, for appellant.
Michael W. Jensen, Deputy Douglas County Attorney, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.
O.S. challenges the constitutionality of the Sex Offender Commitment Act (SOCA).[1] He claims that SOCA violates equal protection, double jeopardy, and an impermissible ex post facto law under the U.S. Constitution and the Nebraska Constitution. O.S. also challenges the sufficiency of the evidence supporting the order of the Mental Health Board of the Fourth Judicial District (the Board) that he is a dangerous sex offender in need of involuntary, inpatient treatment.
We recently decided in In re Interest of J.R.[2] that SOCA does not violate equal protection or double jeopardy and is not an impermissible ex post facto law. Thus, O.S.' constitutional challenge fails. We also conclude that the State presented sufficient evidence to support a finding that O.S. was a dangerous sex offender. But, we also conclude the State failed to show by clear and convincing evidence that involuntary, inpatient treatment was the least restrictive treatment alternative. *726 We affirm in part, and in part reverse and remand to the district court with directions.
In 1986, O.S. pleaded no contest to charges of first degree sexual assault, use of a weapon to commit a felony, and false imprisonment. The district court later sentenced him to 15 to 30 years in prison for first degree sexual assault, 5 to 10 years in prison for use of a weapon to commit a felony, and 1½ to 5 years in prison for first degree false imprisonment. O.S.' discharge date from prison was June 14, 2007.
Because the State believed O.S. to be a dangerous sex offender, he was subject to a psychological evaluation for that determination.[3] Kirk A.B. Newring, Ph.D., a psychologist for the Department of Correctional Services, did the psychological evaluation. At a hearing on June 12, 2007, the Board heard Newring's testimony regarding his evaluation.
As part of the evaluation, Newring reviewed O.S.' records from the Department of Correctional Services (hereinafter Corrections), including police reports from the sexual assault that led to his conviction, misconduct reports while incarcerated, and his mental health records. Newring also conducted a clinical interview. With this information, Newring assessed O.S.' level of risk for sexual reoffense using three tools: a "Static-99" measure, the "Psychopathy Checklist: Revised" (PCL:R), and the "Sex Offender Risk Appraisal Guide" (SORAG). Newring testified that all three are generally accepted in the field of psychology but stated that some in the field do not recommend the use of actuarial instruments.
Newring's testimony included only a brief explanation of each instrument, along with O.S.' scores based solely on Newring's own analysis. The Static-99 is an instrument designed to estimate sexual and violent recidivism risk among sex offenders; it uses risk factors associated with sexual recidivism. O.S. scored a five, placing him in the medium- to high-risk category for committing a future sexual offense compared with other adult male sex offenders. Newring testified that of the individuals within the reference group who also had a score of five, 33 percent sexually reoffended within 5 years of release from incarceration and 40 percent sexually reoffended within 15 years of release from incarceration. Within the same reference group, 42 percent violently reoffended within 5 years of release from incarceration and 52 percent violently reoffended within 15 years of release from incarceration.
The PCL:R assesses whether an individual's behavior is consistent with psychopathy, or whether the individual has personality features that are consistent with interpersonal explosiveness and antisociality. Newring diagnosed O.S. with psychopathy based upon O.S.' score of 29.
SORAG is an actuary-based instrument that estimates a sex offender's risk for repeating a violent offense, which includes sexual reoffense and violent nonsexual reoffense. It uses risk factors that researchers have empirically linked with repeat violent offenders. O.S. scored a 15 on the SORAG. Using as a reference other individuals who also scored a 15, Newring testified that O.S. had a violent recidivism probability of 58 percent within 7 years and 76 percent within 10 years. In sum, Newring explained that three-fourths of the individuals in the reference group who scored a 15 on SORAG were convicted of a violent reoffense within 10 years of their release from prison.
*727 Based on a reasonable degree of psychological certainty, Newring diagnosed O.S. with (1) exhibitionism; (2) paraphilia, not otherwise specified, nonconsent, which means he derives sexual gratification by having sexual interactions with a nonconsenting partner; and (3) a personality disorder, not otherwise specified, psychopathy. Because of mental illness or other factors, Newring concluded that O.S. lacked the capacity and volitional control to refrain from engaging in sexually inappropriate acts. Based upon that diagnosis, Newring testified that O.S. was a dangerous sex offender.[4]
But Newring did not testify whether less restrictive treatment than inpatient or outpatient treatment would be sufficient for O.S. Newring also disclosed that from the evidence in O.S.' record, O.S. had not completed any sexual offender treatment while incarcerated. Newring testified that if he were to evaluate O.S. as a newly admitted prisoner, he would recommend that he remain in the inpatient section of the prison to receive treatment. Corrections has three levels of treatment for incarcerated sex offenders: an individual study program where prisoners remain in the general population but follow a treatment program and meet with counselors; an outpatient program where inmates occupy living units at the Omaha Correctional Center and the Nebraska State Penitentiary and attend weekly treatment sessions; and the inpatient program, which is the most restrictive treatment environment for sex offenders within Corrections. The inpatient treatment program is at the Lincoln Correctional Center and places a sex offender in a controlled setting with little freedom to move around the facility. Newring declined to state what treatment O.S. should receive once the State released him from prison. He did, however, testify that if O.S. were presented for incarceration, he would receive the most restrictive, most intensive treatment available through Corrections.
Based upon Newring's testimony, the Board found O.S. was a dangerous sex offender under § 83-174.01(1)(a) and committed him to involuntary, inpatient treatment. The district court affirmed. Because of the constitutional issues, we granted O.S.' petition to bypass the Nebraska Court of Appeals.
O.S. assigns three errors. First, O.S. asserts that SOCA is unconstitutional under the U.S. Constitution and the Nebraska Constitution because (1) it is an impermissible ex post facto law, (2) it violates double jeopardy, and (3) it violates equal protection. Second, O.S. asserts the Board erred in finding that O.S. is a dangerous sex offender. Third, he claims that the Board erred in finding that neither voluntary hospitalization nor other treatment alternatives less restrictive were available as required by § 71-1209. Under § 71-1209(1),
[t]he state has the burden to prove by clear and convincing evidence that (a) the subject is a dangerous sex offender and (b) neither voluntary hospitalization nor other treatment alternatives less restrictive of the subject's liberty than inpatient or outpatient treatment ordered by the mental health board are available or would suffice to prevent the harm described in subdivision (1) of section 83-174.01.
As previously stated, we addressed the constitutionality of SOCA in In re Interest of J.R.[5] We concluded that SOCA does not violate the Ex Post Facto Clause, *728 the Double Jeopardy Clause, or the Equal Protection Clause. Our ruling in In re Interest of J.R. resolves O.S.' constitutional claims.
Besides his constitutional arguments, O.S. makes three arguments concerning the sufficiency of the State's evidence. He claims that (1) the State failed to present evidence of a "recent act," (2) the evidence does not support the Board's finding that he is a dangerous sex offender, and (3) involuntary, inpatient treatment is the least restrictive alternative.
As we know, the district court reviews the determination of a mental health board de novo on the record.[6] And in reviewing a district court's judgment, we will affirm the judgment unless we find, as a matter of law, that clear and convincing evidence does not support the judgment.[7]
We first address O.S.' "recent act" argument. O.S. asserts that for involuntary commitment under SOCA to comply with due process, the State must prove a "recent act" that shows he is dangerous. He claims that his conviction in 1986 is not a recent act probative of whether he will be dangerous in the future. Thus, he argues the State failed to prove a recent violent act indicating that he is likely to engage in repeat acts of sexual violence.[8]
O.S.' "recent act" argument is based on the statutory requirements of the Nebraska Mental Health Commitment Act (MHCA), not SOCA. We conclude that O.S.' reliance on our holdings under MHCA is misplaced, because neither due process principles nor SOCA requires the State to prove a recent act probative of a sex offender's dangerousness.
Nebraska has two methods for committing individuals suffering from mental illness: SOCA and MHCA.[9] Both aim to confine and provide treatment to mentally ill persons who pose a risk to society.[10] But there is a critical distinctionthe acts focus on different individuals. MHCA applies to any person who is mentally ill and dangerous.[11] SOCA applies specifically to convicted sex offenders who have completed their jail sentence but continue to pose a threat of harm to others.[12] While both require that the individual be proved dangerous, because the acts focus on two different groups of individuals, the conditions for commitment under each act also differ.
We have stated that due process requires the State to show that the need for confinement be based upon "`a substantial likelihood that dangerous behavior will be engaged in unless restraints are applied.'"[13] Under MHCA, a mentally ill and dangerous person is one who is mentally ill or substance dependent and whose condition presents "[a] substantial risk of serious harm to another person or persons within the near future as manifested by evidence of recent violent acts or threats of violence or by placing others in reasonable *729 fear of such harm."[14] To confine an individual against his will under MHCA, the State must show that the individual is mentally ill and that "`"he has actually been dangerous in the recent past and that such danger was manifested by an overt act, attempt or threat to do substantial harm to himself or to another."'"[15]
SOCA has different statutory requirements for declaring a sex offender dangerous. It does not require proof of a recent act of violence or threats or placing others in fear. But its requirements are sufficient to satisfy due process.
SOCA requires that the State show that the person is a dangerous sex offender[16] and suffers from a "mental illness which makes the person likely to engage in repeat acts of sexual violence, who has been convicted of one or more sex offenses, and who is substantially unable to control his or her criminal behavior."[17] Thus, although SOCA does not statutorily require a showing of a recent act of violence, it satisfies due process by requiring the State to prove that a substantial likelihood exists that the individual will engage in dangerous behavior unless restraints are applied.
We next address O.S.' assertion that the State did not prove he was dangerous. As outlined above, for O.S. to be a dangerous sex offender under SOCA, the State must prove by clear and convincing evidence that he is likely to engage in repeat acts of sexual violence and that he is substantially unable to control his criminal behavior.[18] "Likely to engage in repeat acts of sexual violence means the person's propensity to commit sex offenses resulting in serious harm to others is of such a degree as to pose a menace to the health and safety of the public."[19] And unable to control criminal behavior means "having serious difficulty in controlling or resisting the desire or urge to commit sex offenses."[20] In sum, civil commitments under SOCA and MHCA require that the mentally ill person be dangerous and that absent confinement, the person is likely to engage in particular acts which will result in substantial harm to himself or others.[21]
In determining whether a person is dangerous, the focus must be on the person's condition at the time of the hearing.[22] Actions and statements of a person alleged to be mentally ill and dangerous which occur before the hearing are probative of the subject's present mental condition.[23] But, for a past act to have evidentiary value, the past act must have some foundation for a prediction of future dangerousness, thus being probative of that issue.[24] Although assessment of whether a person will be dangerous calls for a medical decision, the sufficiency of the evidence *730 required to support such a decision presents a legal question.[25]
The Board relied on Newring's testimony that O.S. was a dangerous sex offender. He testified that O.S. has a sexual assault recidivism risk of 33 percent within 5 years and 40 percent within 15 years. He has a violent recidivism probability of 58 percent within 7 years and 76 percent within 10 years. He also diagnosed O.S. with psychopathy personality disorder, exhibitionism, and paraphilia. Newring also opined that O.S. lacks the capacity or control, because of mental illness or other factors, to refrain from engaging in a sexually inappropriate act. And, if released into the community, O.S. would pose a threat to others. O.S. presented no evidence contesting Newring's findings. O.S. also did not challenge the recidivism rates for his scores. We conclude that Newring's evaluation was sufficient and probative of whether O.S. remains a danger to society.
Finally, we turn to O.S.' argument that involuntary, inpatient treatment was more restrictive than other alternative treatment. Under § 71-1209(1)(b), the State must prove that neither voluntary hospitalization nor other alternative treatment less restrictive than inpatient treatment would prevent the individual from harming himself or others. O.S. argues that the State presented no evidence regarding the least restrictive treatment alterative. He contends the State's evidence fails, because the State's expert, Newring, only testified as to the treatment O.S. would receive should he remain incarcerated.
Specifically, Newring testified that the referral question he received from the State was whether O.S. was a dangerous sex offender. He stated that he was not asked to give an opinion on the least restrictive treatment alternative. He stated:
[T]he referral question that I'm ethically obliged to answer is does a person meet criteria for dangerous sex offender based on the information available to me, and that's all that the law requests me to do. To go beyond that would be inappropriate, so I was just going to answer the question that's asked within the law....
Newring went on to state that he could not "speak to what [treatment options] community providers would offer." He could only state what treatment options would be available within Corrections.
We conclude that the State failed to prove by clear and convincing evidence that no other alternative treatment less restrictive than involuntary, inpatient treatment was sufficient. Newring's testimony reflected treatment options available only within Corrections. Because the State presented no evidence regarding treatment options outside Corrections, we reverse the district court's decision that involuntary, inpatient treatment is the least restrictive treatment alternative. We remand the cause back to the district court with directions to remand the matter back to the Board, so that the Board can determine the least restrictive treatment alternative as required under § 71-1209(1)(b).
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.
NOTES
[1] Neb.Rev.Stat. §§ 71-1201 to 71-1226 (Cum. Supp.2008).
[2] In re Interest of J.R., 277 Neb. 362, 762 N.W.2d 305 (2009).
[3] See §§ 71-1202 and 71-1205.
[4] See Neb.Rev.Stat. § 83-174.01(1)(a) (Cum. Supp.2008).
[5] See In re Interest of J.R., supra note 2.
[6] Id.
[7] See id.
[8] See In re Interest of Kochner, 266 Neb. 114, 662 N.W.2d 195 (2003).
[9] See Neb.Rev.Stat. § 71-901 to 71-962 (Cum.Supp.2006).
[10] See Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002).
[11] § 71-901.
[12] § 71-1202.
[13] In re Interest of J.R., supra note 2, 277 Neb. at 386, 762 N.W.2d at 325, quoting In re Interest of Blythman, 208 Neb. 51, 302 N.W.2d 666 (1981).
[14] § 71-908(1).
[15] In re Interest of Kochner, supra note 8, 266 Neb. at 121, 662 N.W.2d at 202, quoting In re Interest of Blythman, supra note 13. Accord Lynch v. Baxley, 386 F.Supp. 378 (M.D.Ala. 1974).
[16] § 71-1209(1).
[17] § 83-174.01(1)(a).
[18] §§ 71-1209(1), 71-1203(1), and 83-174.01(1)(a).
[19] § 83-174.01(2).
[20] § 83-174.01(6). See, also, Crane, supra note 10.
[21] See In re Interest of J.R., supra note 2. See, also, In re Interest of Blythman, supra note 13.
[22] Id.
[23] Id.
[24] Id.
[25] Id.