IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF C.A.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF C.A., ALLEGED TO BE A DANGEROUS SEX OFFENDER.

C.A., APPELLANT,

V.

MENTAL HEALTH BOARD OF THE FOURTH JUDICIAL DISTRICT
AND STATE OF NEBRASKA, APPELLEES.

Filed November 22, 2016.    No. A-16-575.

Appeal from the District Court for Douglas County: HORACIO J. WHEELOCK, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Ryan T. Locke for appellant.

Eric W. Wells, Deputy Douglas County Attorney, for appellee State of Nebraska.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

RIEDMANN, Judge.

INTRODUCTION

C.A. appeals from the decision of the district court for Douglas County, affirming the decision of the Mental Health Board of the Fourth Judicial District (Board). The Board found C.A. to be a dangerous sex offender under the Sex Offender Commitment Act (SOCA), Neb. Rev. Stat. § 71-1201 et seq. (Reissue 2009), and ordered him to undergo secure inpatient treatment. We find no merit to the arguments raised on appeal and therefore affirm.

- 1 -

BACKGROUND

The Douglas County Attorney filed a petition with the Board, alleging that C.A. was a dangerous sex offender within the meaning of SOCA. A hearing before the Board was held in January 2016. Dr. Alan Levinson, a psychologist with the Nebraska Department of Correctional Services, testified regarding an evaluation of C.A. he conducted in October 2015. In order to formulate his opinions and diagnoses, Levinson reviewed background information on C.A.'s criminal offenses and institutional records, interviewed C.A. for approximately 6 hours, and utilized actuarial diagnostic tools. At the time of Levinson's evaluation, C.A. was serving a five year sentence after pleading no contest to an amended charge of intentional child abuse without serious bodily injury or death. According to Levinson's report, the victim was C.A.'s 13 year old daughter, who reported that she awoke to C.A. touching her vaginal area and breasts on top of her clothes on two occasions within a 30 minute time frame.

C.A. has a 20-year history of sexually assaulting women. In 1993, he was convicted in Arizona of kidnapping and attempted sexual assault after forcibly subjecting the victim to penetration. In 2009, C.A. subjected two separate victims to forcible penetration in Florida. He was initially charged with two counts of sexual assault, but the charges were reduced to felony battery. C.A. also has two convictions for sex offender registration violations.

In assessing whether C.A. is a dangerous sex offender, Levinson utilized actuarial diagnostic tools including the Static-99-R, the Stable-2007, and the Sex Offender Risk Appraisal Guide (SORAG). The Static-99-R is designed to estimate the risk of sexual recidivism among sex offenders by assessing 10 factors which tend to stay relatively stable over time. C.A. scored a 6, which places him at a high risk for committing future sex offenses relative to other male sex offenders. Statistically, a score of 6 equates to approximately a 20 percent chance of sexually reoffending in 5 years and a 27 percent chance over a 10 year period. The Stable-2007 similarly predicts an offender's likelihood of committing a future sex offense by measuring risk factors that tend to change over time, usually in relation to participation in treatment. C.A. scored a 12, which is high risk or high level of treatment needs. The Static-99 score and Stable-2007 score are generally combined to provide a broader idea of overall risk of reoffense. C.A.'s combined score placed him in the very high risk category.

The SORAG is a list of 14 factors which are associated with sexual recidivism and provides an overall idea of an offender's likelihood to engage in violent behaviors, including sexually violent behavior. C.A.'s score placed him in the sixth of nine "bins" where a score in the ninth bin is the highest risk level. Statistically, his score showed a 59 percent chance of committing a violent offense within a 7 year period, and a 78 percent chance of committing a violent offense within a 10 year period.

Levinson also evaluated C.A. pursuant to the diagnostic criteria outlined in the Diagnostic and Statistical Manual of Mental Disorders Fourth Edition (DSM-IV). He diagnosed C.A. with paraphilia not otherwise specified with hebephilic and nonconsensual tendencies. This diagnosis was based on C.A.'s history of sexually assaulting four nonconsenting females, including his then 13 year old daughter, over an extended period of time. Levinson explained at the hearing that C.A.'s diagnosis meets the definition of mental illness under SOCA, because it shows a propensity

to engage in these sexual behaviors without regard for others and a thought process that allows him to engage in these behaviors. Levinson also diagnosed C.A. with alcohol abuse, because his abuse of alcohol has contributed to social, occupational, and legal difficulties, including his current and previous sexual offenses. Finally, C.A. was diagnosed with personality disorder not otherwise specified with antisocial and narcissistic features because of his disregard for societal rules, irresponsibility, lack of concern for others, sense of entitlement, interpersonal exploitation of others, arrogance, and disregard for the safety of others.

Based on C.A.'s diagnoses, Levinson opined to a reasonable degree of psychological certainty that C.A. has the propensity to engage in repeat acts of sexual violence which would result in serious harm to others, because he shows disregard for other people and has demonstrated a pattern of behavior that shows he will do what he wants when he has the opportunity. Levinson also opined that C.A. poses a menace to the health and safety of the public, because he has not demonstrated that he has taken any steps to alleviate or mitigate his issues. Levinson expressed concern about C.A.'s ability to recognize all of his warning signs and ability to independently seek help when warning signs arise. C.A.'s two convictions for sex offender registration offenses concern Levinson because they show a pattern of behavior and a disregard for rules and the ability to follow them.

Levinson also voiced concern that C.A.'s descriptions of his sexual offenses differed significantly from police reports and presentence investigation reports. For the most recent offense, C.A. denied intentionally touching his daughter's breasts or vaginal area, but the victim reported he did so intentionally on two separate occasions. C.A. also minimized the prior offense which occurred in Arizona, and Levinson was concerned that the offense was much more violent than C.A. reported and there was never any consent from the victim to engage in sexual activity.

In Levinson's opinion, inpatient treatment was the least restrictive treatment alternative that would prevent C.A. from committing future sex offenses. Levinson believed that the structure and security provided by an inpatient program was necessary, and if C.A did not complete inpatient treatment, he would have serious difficulties controlling or resisting the desire to commit future sex offenses. Levinson explained that C.A.'s personality disorder is pervasive and develops over time, so it takes more time and effort to address in treatment, and there is no evidence that C.A. has done anything to mitigate his risk for reoffense.

Ray Myers, a counselor and psychotherapist, testified that if C.A. was ready for outpatient treatment, he would be willing to provide it. Assuming C.A. was ready for treatment, Myers believed that outpatient treatment would be the least restrictive treatment alternative. Myers did not evaluate C.A. or utilize any diagnostic tools; he deferred to Levinson's assessment and diagnoses. Myers opined that C.A. was ready for treatment because he looked and acted tired and showed genuine remorse, especially over his daughter. Despite this, Myers testified that C.A. adamantly denied sexually assaulting his daughter; he claimed he may have inadvertently touched her but denied doing so intentionally. If Myers provided outpatient treatment to C.A., he would provide a maximum of two hours of therapy per week. The only requirement for Myers' patients is to make and keep their appointments; otherwise, they do not have to check in with him.

At the conclusion of the hearing, the Board found by clear and convincing evidence that C.A. was a dangerous sex offender. The Board also determined that C.A. was likely to engage in

repeat acts of sexual violence, had been convicted of one or more sex offenses, and was substantially unable to control his behavior.

The Board concluded that C.A. needed more intensive treatment than that offered by outpatient treatment and, thus, found that inpatient treatment was the least restrictive alternative in order to manage C.A.'s behaviors and protect the safety of the public. The Board recognized that C.A. had participated in programs while incarcerated but noted that shortly after he was released from incarceration in Florida, during which he participated in programming, he faced another charge of a sex offense in a short time.

C.A. appealed the Board's decision to the Douglas County District Court. The district court affirmed, finding that the Board's decision was supported by clear and convincing evidence. C.A. now appeals to this court.

## ASSIGNMENTS OF ERROR

C.A. assigns that the district court erred in (1) affirming the Board's finding that he is a dangerous sex offender and (2) affirming the Board's finding that inpatient treatment is the least restrictive treatment alternative.

## STANDARD OF REVIEW

The district court reviews the determination of a mental health board de novo on the record. *In re Interest of S.J.*, 283 Neb. 507, 810 N.W.2d 720 (2012). In reviewing a district court's judgment, an appellate court will affirm unless it finds, as a matter of law, that clear and convincing evidence does not support the judgment. *Id*.

## ANALYSIS

*Dangerous Sex Offender.*

C.A. argues that the district court erred in affirming that the State proved by clear and convincing evidence that he is a dangerous sex offender. In order to establish that C.A. is a dangerous sex offender under SOCA, the State was required to prove that he is a person who suffers from a mental illness which makes him likely to engage in repeat acts of sexual violence, who has been convicted of one or more sex offenses, and who is substantially unable to control his criminal behavior. Neb. Rev. Stat. § 83-174.01 (Reissue 2014).

C.A. first claims that the evidence was lacking to prove that he suffers from a mental illness. Under SOCA, a mental illness means having a psychiatric disorder that involves a severe or substantial impairment of a person's thought processes, sensory input, mood balance, memory, or ability to reason which substantially interferes with such person's ability to meet the ordinary demands of living or interferes with the safety or well-being of others. Neb. Rev. Stat. §§ 71-907 and 71-1203 (Reissue 2009).

Levinson diagnosed C.A. with paraphilia not otherwise specified with hebephilic and nonconsensual tendencies. He testified that paraphilia not otherwise specified is an Axis I mental illness under the DSM-IV and satisfies the definition of mental illness under § 71-907. See also *In re Interest of D.H.*, 281 Neb. 554, 797 N.W.2d 263 (2011) (paraphilia not otherwise specified is an Axis I mental illness under the DSM-IV). There was no expert testimony to the contrary

suggesting that C.A. does not suffer from mental illness or that C.A.'s mental illness does not meet the required definition. Thus, the expert testimony of Levinson supports the finding that C.A. has a mental illness. See *id*.

Because the State established that C.A. has a mental illness under SOCA, it was required to prove that he has been convicted of at least one sex offense. Sex offense means any of the offenses listed in section 29-4003 for which registration as a sex offender is required. § 83-174.01(5). Kidnapping is listed in section 29-4003, and thus, C.A.'s 1993 kidnapping conviction satisfies this requirement.

C.A. next argues that the evidence was insufficient to establish that his mental illness makes him likely to engage in repeat acts of sexual violence and that he is substantially unable to control his criminal behavior. Likely to engage in repeat acts of sexual violence means the person's propensity to commit sex offenses resulting in serious harm to others is of such a degree as to pose a menace to the health and safety of the public. § 83-174.01(2). Substantially unable to control his criminal behavior means having serious difficulty in controlling or resisting the desire or urge to commit sexual offenses. § 83-174.01(6).

Levinson explained that a diagnosis of paraphilia not otherwise specified has been shown to increase the likelihood of repeated acts of sexual violence. He opined that therefore C.A. was likely to engage in repeat acts of sexual violence which would result in serious harm to others, because he shows disregard for other people and has demonstrated a pattern of behavior that shows that when he gets the opportunity he will do what he wants. Levinson also testified that C.A. poses a menace to the health and safety of the public, because he has not demonstrated that he has taken any steps to alleviate or mitigate his issues. Levinson believed that based on C.A.'s diagnoses, if he did not complete inpatient treatment, he would have serious difficulties controlling or resisting the desire to commit future sex offenses.

In reaching his opinions, Levinson also relied on the diagnostic tools which demonstrated that C.A. was a high risk to reoffend. C.A. claims these results are unreliable and insufficient to prove that he is likely to engage in repeat acts of sexual violence.

In *In re Interest of G.H.*, 279 Neb. 708, 781 N.W.2d 438 (2010), the sex offender argued that his diagnostic test results did not provide a sufficient basis for the psychologist's opinion that he would pose a danger if released without treatment. The Supreme Court noted that the psychologist did not rely exclusively on the results of the STATIC-99, Stable 2000, and SORAG assessments in forming his opinion; rather, he also considered the history he obtained from the sex offender and the clinical interview he conducted. Further, the psychologist testified that the risk assessment instruments were peer reviewed and generally accepted in the field of psychology as a means of assessing the risk that a convicted sex offender will reoffend. Thus, the court concluded that there was adequate foundation for the admission of the risk assessment scores, and they were properly considered by the Board and district court as part of the basis for the psychologist's opinions. *Id*. See also *In re Interest of O.S.*, 277 Neb. 577, 763 N.W.2d 723 (2009) (concluding that psychologist's evaluation, which included STATIC-99 and SORAG scores, was sufficient and probative of the fact that sex offender remained a danger to society).

In the present case, as in *In re Interest of G.H.*, Levinson did not rely solely on the diagnostic scores to assess C.A.'s risk to reoffend. Rather, he also relied on his interview with C.A. and C.A.'s history. He noted that C.A.'s diagnosis of paraphilia not otherwise specified has been

shown to increase the likelihood of repeat acts of sexual violence. Levinson also noted that C.A. reported completing sex offender treatment programming while incarcerated in Florida, but was convicted of a sexual offense thereafter. Based upon C.A.'s history and scores in the high risk or very high risk levels, Levinson concluded that C.A.'s history of sexual perpetration is suggestive of someone substantially unable to control or resist the desire or urge to commit sexual offenses. Levinson explained that the diagnostic tools are generally relied upon in the field of psychology and an accepted standard of practice.

Levinson noted additional factors causing him concern, including that C.A. has a history of poor insight and judgment, irresponsibility, arrogance, and limited coping skills which make him prone to respond sexually or aggressively to stressful or emotionally laden situations. Further, Levinson reported that C.A. does not have a specific, stable, and supportive aftercare plan, and he was unable to provide a functional relapse prevention plan. Based on the foregoing, we conclude that the district court did not err in affirming the Board's finding that C.A. suffered from a mental illness making him likely to engage in repeat acts of sexual violence and that he was substantially unable to control his criminal behavior.

*Least Restrictive Treatment Alternative.*

Finally, C.A. asserts that the district court erred in finding that the State presented sufficient evidence to establish that inpatient sex offender treatment was the least restrictive alternative. We find no merit to this argument.

In addition to establishing that C.A. was a dangerous sex offender, the State also had the burden of proving by clear and convincing evidence that neither voluntary hospitalization nor other alternative treatment less restrictive than inpatient treatment would prevent him from harming himself or others. Neb. Rev. Stat. § 71-1209 (Reissue 2009); *In re Interest of G.H.*, 279 Neb. 708, 781 N.W.2d 438 (2010).

Based on Levinson's expertise in sex offender risk assessment and treatment and the information available to him regarding treatment options, Levinson believed that C.A. would be best served in a comprehensive inpatient setting with intensive supervision and intervention to address his needs. Levinson opined that the structure and security provided by inpatient treatment was necessary in order to prevent C.A. from committing future sex offenses. Although Myers offered to provide outpatient treatment to C.A., he deferred to and concurred with Levinson's assessment and diagnoses and based his treatment option on C.A.'s internal motivation to complete treatment. However, in Levinson's opinion, C.A.'s lack of veracity and consistency in self reporting posed a significant risk should he be allowed unsupervised in the community and be expected to self-report to providers and members of his support system.

In assessing Levinson's opinion as to the least restrictive treatment alternative, the district court considered that the Board saw and heard Levinson's testimony and observed his demeanor and the court gave weight to the Board's judgment regarding his credibility. We also afford weight to the Board's judgment as to credibility. See *In re Interest of S.J.*, 283 Neb. 507, 810 N.W.2d 720 (2012). We therefore find no error in the district court's decision affirming the Board's finding that inpatient treatment is the least restrictive alternative.

CONCLUSION

We conclude that the district court did not err in affirming the Board's finding that C.A. is a dangerous sex offender and that inpatient treatment is the least restrictive treatment alternative. We therefore affirm.

AFFIRMED.