IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

IN RE INTEREST OF M.J.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF M.J., ALLEGED TO BE A DANGEROUS SEX OFFENDER.

M.J., APPELLANT,

V.

LANCASTER COUNTY MENTAL HEALTH BOARD, APPELLEE.

Filed December 31, 2019.    No. A-19-367.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, Kristi Egger, and Ella M. Newell, Senior Certified Law Student, for appellant.

Patrick F. Condon, Lancaster County Attorney, and Christopher D. Seifert, for appellee.

PIRTLE, RIEDMANN, and WELCH, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

M.J. appeals from an order entered by the district court for Lancaster County affirming a finding by the Lancaster County Mental Health Board (Board) that he is a dangerous sex offender in need of involuntary inpatient treatment pursuant to the Nebraska Sex Offender Commitment Act (SOCA). Neb. Rev. Stat. § 71-1201 et seq. (Reissue 2018). We affirm the decision of the district court.

## II. BACKGROUND

On June 18, 2018, the State filed a petition before the Board alleging M.J. suffers from a mental illness making him likely to engage in repeated acts of sexual violence. The petition further

alleges that because M.J. is a convicted sex offender and is substantially unable to control his criminal behavior, the least restrictive treatment alternative upon his release from prison is a Board-ordered hospitalization. In support of the petition the State submitted a sworn affidavit from Agnes Stairs, Ph.D., a licensed psychologist employed by the Nebraska Department of Corrections and experienced in performing sex offender assessments.

The parties presented evidence to the Board during two hearings held on August 2 and 21, 2018. As a preliminary matter, M.J. objected to the appointment of the Lancaster County Public Defender as counsel because he believed the fact the office had represented him in his criminal cases created a conflict of interest. The Board chair inquired of M.J., and it became clear the "conflict" with the public defender's office was M.J.'s conclusion that he had received ineffective assistance of counsel. The Board chair asked the public defender if her office had done any "conflict checks," and the public defender indicated the office had followed its ordinary procedure and "found none." The Board chair ultimately concluded M.J. was "unhappy with the result" of his prior criminal matters and was unwilling to characterize the situation as a "conflict of interest." The Board agreed M.J. could represent himself, but the public defender was ordered to sit next to M.J. and serve as standby counsel. The record is clear M.J. relied on the public defender for advice and the presentation of evidence from the outset. There is no indication in the record that M.J. objected to the public defender's management of the case, nor is there any presentation of anything by M.J.

On August 21, 2018, the Board concluded there was clear and convincing evidence to support the allegations in the State's petition. The Board issued an order committing M.J. to involuntary hospitalization with the Nebraska Department of Health and Human Services (DHHS) for sex offender treatment. On September 6, M.J. timely appealed the Board's order. The district court affirmed the Board's order on March 18, 2019. M.J. then appealed the court's order to this court on April 15.

During the hearing before the Board, the State's only witness was Stairs. In the course of her employment with the Department of Corrections since 2010, Stairs has conducted "over 100 sex offender evaluations under the SOCA" and she has testified "at least three times" as an expert witness. Stairs testified M.J.'s conviction history subjected him to mandatory evaluation under SOCA to determine whether he met the definition of "dangerous sex offender." M.J. refused to participate in the evaluation because he continued to maintain his innocence of the crime charged in October 1996, first degree sexual assault of a child. M.J. was sentenced to 25 to 40 years' imprisonment for this crime on April 2, 1997, and this was the sentence he was serving at the time of Stairs' SOCA evaluation.

In proceeding without him, Stairs reviewed M.J.'s conviction history, his prior psychological reports, and Department of Corrections' classification studies. In 1978, M.J. was convicted of second degree sexual assault while putting a broken bottle or knife to the throat of a 16-year-old male. In 1979, M.J. was convicted of first degree forcible sexual assault on a child after threatening to stab or shoot his 14-year-old male victim. M.J.'s 1996 conviction involved digital penetration of a 13-year-old female. During M.J.'s most recent incarceration, he received a misconduct report for masturbating to pornography in his cell. And over the course of his most

recent sentence, M.J. was found guilty of 63 additional misconduct charges for various rule violations.

Stairs then described the assessment tools typically used in SOCA evaluations which were also used in this instance. The Static 99-R test measures risk of sexual recidivism among sex offenders and looks at age, romantic history, prior violent history, victim characteristics, including whether the victim is related to the perpetrator or not, whether the victim was male, and whether he had only known the perpetrator for 24 hours. The Static 99-R produced a score of seven placing M.J. in the "well above average" category, or "twice the risk of re-offense as the average sex offender" within 5 years of release. Stairs testified if she factored in his age at the time of the Board hearing, he would score a five, which still places him in the "well above average category" for risk to reoffend. M.J. was 60 years old at the time of the Board hearing. When Stairs first started her evaluation, she used his current age of 59 because that was his age when he was parole eligible and is the preferred measure.

Stairs also used the Psychopathy Checklist-Revised to assess personality traits like impulsivity, irresponsible or criminal lifestyle, lack of remorse, lack of empathy, manipulative behavior, and lying. Stairs testified M.J. scored a 27.5 out of 40 on the Psychopathy Checklist-Revised which indicates "possible psychopathy or antisocial personality disorder."

In utilizing the Violence Risk Appraisal Guide-Revised (VRAG-R), Stairs was analyzing the risk of violent recidivism based on a review of M.J.'s file. This tool considers criminal history, age at the time of conviction of the current offense, childhood behaviors like conduct disorder, substance use, and number of jail admissions. In reviewing the results, Stairs concluded M.J. fell into the "very highest level of risk for an overall violent re-offense" with a score of 38.3. The Stable-2007 test was not used in M.J.'s case because of his refusal to participate in an interview with Stairs.

When asked if she was able to make a diagnosis of M.J. based on a reasonable degree of psychological certainty, Stairs testified in the affirmative and advised the Board that M.J. met the criteria for antisocial personality disorder. Typical of this disorder are "deviant sexual interests" which are a "big predictor of recidivism and re-offense." Stairs testified it was her professional opinion that if M.J. were "released today," he would pose a threat to the community based on his diagnosis, the presence of significant levels of traits associated with psychopathy, and the actual assessments placing him in the highest risk group for violent reoffense. Stairs concluded it was her professional opinion that M.J. met the definition of dangerous sex offender pursuant to Neb. Rev. Stat. § 83-174.01 (Reissue 2014). As a result of this judgment, Stairs testified to a reasonable degree of psychological certainty that the least restrictive treatment option for M.J. was an inpatient program and "anything less would be insufficient to prevent harm" to the community.

M.J. testified he had "successfully completed" sex offender treatment at the Lincoln Regional Center from 1980 through 1983 during an earlier incarceration. Stairs testified M.J. was discharged from treatment in 1983 "without really participating" after reaching "maximum benefit." M.J. indicated he would be willing to undergo sex offender treatment on an outpatient basis if he was released into the community even though he had not made any arrangements to locate a program at the time of his Board hearing.

M.J. offered a copy of an email from Victoria Nicholas, a Unit Case Manager from the Omaha Correctional Center, characterizing M.J. as a model inmate, although he is "anti mental health and he doesn't believe he has done anything wrong." Nicholas acknowledges housing unit staff have expressed concerns about M.J. pressuring younger inmates for sex but she does not "remember substantial evidence" to support those allegations. Nicholas says she admires M.J. for the pride he seems to take in keeping his housing unit clean and appreciates his efforts in helping other inmates with their chores. Nicholas was not available to appear before the Board in person.

At the conclusion of the hearing, the Board found that there was clear and convincing evidence to support the allegations in the State's petition, that M.J. was a dangerous sex offender likely to engage in repeat acts of sexual violence, and that the least restrictive alternative was an inpatient commitment with DHHS.

## III. ASSIGNMENTS OF ERROR

M.J. assigns as error: (1) there was insufficient evidence for the Board to find he was a dangerous sex offender in need of inpatient treatment and the court erred in upholding the Board's findings, (2) the evaluations by Stairs were untimely and the court erred in affirming the Board's conclusions, (3) the Board did not have subject matter jurisdiction over the matter and the court erred in confirming the Board's findings, (4) the Board erred when it ruled there was no conflict of interest in the public defender's representation of him and the court erred in affirming the Board's findings, and (5) the Board erred when it admitted inadmissible evidence and the court sustained the Board's decisions.

## IV. STANDARD OF REVIEW

The subject of a petition, or the county attorney, may appeal a treatment order of the mental health board under § 71-1209 to the district court for de novo review on the record. § 71-1214. And in reviewing a district court's judgment under SOCA, an appellate court will affirm unless it finds, as a matter of law, that clear and convincing evidence does not support the judgment. See *In re Interest of D.V.*, 277 Neb. 586, 763 N.W. 717 (2009).

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Pursuant to SOCA, the State
has the burden to prove by clear and convincing evidence that (a) the subject is a dangerous sex offender and (b) neither voluntary hospitalization nor other treatment alternatives less restrictive of the subject's liberty than inpatient or outpatient treatment ordered by the mental health board are available or would suffice to prevent the harm described in subdivision (1) of section 83-174.01.

§ 71-1209. Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *State v. Johnson*, 287 Neb. 190, 842 N.W.2d 63 (2014).

(a) M.J. Is Dangerous Sex Offender

A dangerous sex offender is defined as

(a) a person who suffers from a mental illness which makes the person likely to engage in repeat acts of sexual violence, who has been convicted of one or more sex offenses, and who is substantially unable to control his or her criminal behavior or (b) a person with a personality disorder which makes the person likely to engage in repeat acts of sexual violence, who has been convicted of two or more sex offenses, and who is substantially unable to control his or her criminal behavior.

§ 83-174.01(1).

### (i) M.J. Has "Personality Disorder"

Stairs diagnosed M.J. with antisocial personality disorder, which describes "deviant sexual interests" and "is a big predictor of recidivism and re-offense." M.J. did not refute this testimony, and therefore, the State provided clear and convincing evidence that M.J. suffers from a personality disorder making him likely to engage in repeat acts of sexual violence.

### (ii) M.J. Is Likely to Reoffend

Stairs testified that M.J.'s personality disorder makes him likely to engage in repeat acts of sexual violence and that he poses a risk to the community if he were released without treatment. Stairs' evaluation of M.J. revealed "twice the risk of re-offense as the average sex offender" within 5 years of release. Since "deviant sexual interests" are typical of M.J.'s personality disorder and such interests are a "big predictor of recidivism and re-offense," the evidence of the risk of reoffending is clear and convincing. M.J. did not present any evidence clearly establishing otherwise.

### (iii) M.J. Has Been Convicted of Two or More Sex Offenses

M.J. was convicted of a sex offense against a 16-year-old white male in 1978. This crime involved threats made with a broken bottle or knife placed against the victim's neck. In 1980, M.J. was convicted of first degree sexual assault on a child when he threatened to stab or shoot his 14-year-old white male victim. And even though M.J. maintains his innocence and has since 1996, a jury found him guilty of first degree sexual assault of a child for digitally penetrating a 13-year-old female. The evidence is clear and convincing that M.J. has been convicted of "two or more sex offenses" over the span of 20 years.

### (iv) M.J. Is Unable to Control His Behavior

Stairs testified that the VRAG-R scored M.J. "in the highest or most-riskiest category in terms of risk for violent re-offense." And the Static-99-R assessment scored M.J. at a seven (based on age 59) or five (based on age 60) which, either way, puts him in the well-above-average risk category to reoffend. In *In re Interest of D.I.*, 281 Neb. 917, 799 N.W.2d 664 (2011), the Nebraska Supreme Court affirmed a Board's decision that the committed individual remained a dangerous sex offender 5 years later where the Static 99-R score was medium to high risk to reoffend.

Utilizing the same instrument in this case, Stairs concluded M.J. was in "the highest, most riskiest category to reoffend," which we believe is clear and convincing evidence that M.J. is unable to control his behavior. M.J. did not present any evidence refuting Stairs' expert testimony.

In our judgment, the expert testimony was sufficient to establish by clear and convincing evidence that M.J. meets the statutory definition of a dangerous sex offender. M.J. did not present any evidence shaking our belief that he was in "the most riskiest category" of offenders to reoffend as to any element of the statutory definition.

### (b) Involuntary Inpatient Treatment Is Least Restrictive

The second factor that the State was required to prove is that neither voluntary hospitalization nor other treatment alternatives less restrictive than inpatient treatment would suffice to prevent the harm described in § 83-174.01(1). Stairs testified to a reasonable degree of psychological certainty that anything less that inpatient treatment would not be sufficient to protect the community from the risk of harm. M.J. testified he would comply with treatment in the community, but he acknowledged he had not located a program.

M.J. relies on *In re Interest of O.S.*, 277 Neb. 577, 763 N.W.2d 723 (2009), for the proposition that expert testimony which only established dangerousness was insufficient for the Board to order an involuntary commitment. M.J. argues Stairs' failure to conduct a personal interview as part of her evaluation results in the same insufficiency with regard to commitment since all she did was review documents dating back to the 1970's.

M.J. cannot have it both ways. M.J. refused to speak with Stairs. Nevertheless, Stairs concluded to a reasonable degree of psychological certainty that inpatient commitment is the least restrictive alternative for M.J. based on her document review, the assessment tools, M.J.'s ongoing denial of responsibility for the 1996 crime, and the fact that he never completed a treatment program. We believe the evidence is clear and convincing that an inpatient commitment is the least restrictive alternative in this case. See *In re Interest of D.I., supra* (court held Board did not err when it determined that no less restrictive alternative to involuntary inpatient treatment was available where D.I. had not cooperated in completing treatment and continued to claim he had done nothing wrong).

### 2. UNTIMELY EVALUATION

M.J. asserts the State violated Neb. Rev. Stat. § 83-174.02 (Cum. Supp. 2018) by failing to determine whether he was a dangerous sex offender 180 days prior to his scheduled release, and further, by failing to provide him notice of the results within 150 days. Neb. Rev. Stat. § 83-174.02 provides:

> (1) The Department of Correctional Services shall order an evaluation of the following individuals by a mental health professional to determine whether or not the individual is a dangerous sex offender:
>
> (a) Individuals who have been convicted of (i) sexual assault of a child in the first degree pursuant to section 28-319.01 or (ii) sexual assault in the first degree pursuant to section 28-319;

(b) Individuals who have been convicted of two or more offenses requiring registration as a sex offender under section 29-4003 if one of the convictions was for any of the following offenses: (i) Kidnapping of a minor pursuant to section 28-313, except when the person is the parent of the minor and was not convicted of any other offense; (ii) sexual assault in the first degree pursuant to section 28-319 or sexual assault in the second degree pursuant to section 28-320; (iii) sexual assault of a child pursuant to section 28-320.01; (iv) sexual assault of a child in the first degree pursuant to section 28-319.01; (v) sexual assault of a child in the second or third degree pursuant to section 28-320.01; (vi) sexual assault of a vulnerable adult or senior adult pursuant to subdivision (1)(c) of section 28-386; (vii) incest of a minor pursuant to section 28-703; (viii) visual depiction of sexually explicit conduct of a child pursuant to section 28-1463.03; or (ix) any offense that is substantially equivalent to an offense listed in this section by any state, territory, commonwealth, or other jurisdiction of the United States, by the United States Government, or by court-martial or other military tribunal, notwithstanding a procedure comparable in effect to that described in section 29-2264 or any other procedure to nullify a conviction other than by pardon;

(c) Individuals convicted of a sex offense against a minor who have refused to participate in or failed to successfully complete the sex offender treatment program offered by the Department of Correctional Services or the Department of Health and Human Services during the term of incarceration. The failure to successfully complete a treatment program due to time constraints or the unavailability of treatment programming shall not constitute a refusal to participate in treatment; and

(d) Individuals convicted of failure to comply with the registration requirements of the Sex Offender Registration Act who have previously been convicted for failure to comply with the registration requirements of the act or a similar registration requirement in another state.

(2) The evaluation required by this section shall be ordered at least one hundred eighty days before the scheduled release of the individual. Upon completion of the evaluation, and not later than one hundred fifty days prior to the scheduled release of the individual, the department shall send written notice to the Attorney General, the county attorney of the county where the offender is incarcerated, and the prosecuting county attorney. The notice shall contain an affidavit of the mental health professional describing his or her findings with respect to whether or not the individual is a dangerous sex offender.

As a result of these failures, M.J. argues the Board was wrong to consider Stairs' evaluation.

The Supreme Court has considered the meaning of § 83-174.02 and has concluded:

The time periods mentioned in § 83-174.02(2) designate when DCS shall provide information to prosecutors, but the statute does not prescribe any type of notice to the offender. We conclude that § 83-174.02 provides a mechanism for identifying potentially dangerous sex offenders prior to their release from incarceration and for notifying prosecuting authorities so that they will have adequate time to determine whether to file a petition under SOCA before the offender's release date. But the statute does not create any

substantive or procedural rights in the offender who is the subject of the mental health evaluation.

*In re Interest of D.H.*, 281 Neb. 554, 561, 797 N.W.2d 263, 269 (2011). The statute does not pertain to Board proceedings and does not restrict a Board's consideration of evaluations, even if they were not provided to county attorneys within the required time frames. We note M.J.'s disagreement with *In re Interest of D.H., supra*, but this court is bound by the decisions of the Nebraska Supreme Court. As a result, this argument fails.

### 3. LACK OF JURISDICTION

M.J. argues the Board lacked jurisdiction over the matter because the criminal information filed against him on September 3, 1996, was not filed 24 hours prior to his arraignment as required by Neb. Rev. Stat. § 29-424 (Reissue 2016). M.J. does not explain how this fact divests the Board of any authority over him.

Nebraska statutes give each presiding judge in each judicial district the authority to create mental health boards and empowers the board to carry out its duties. Neb. Rev. Stat. § 71-915 (Reissue 2018). "Mental health board proceedings shall be deemed to have commenced upon the . . . filing of a petition under section 71-1205." § 71-1206. The petition in this case was filed by the Lancaster County Attorney on June 26, 2018, pursuant to the provisions of the SOCA, and alleged that M.J. is a mentally ill and dangerous sex offender, unable to control his behavior, for whom involuntary inpatient treatment is required. Since the petition against M.J. made allegations within the purview of the Board and was properly filed, the Board had jurisdiction over the matter and over M.J.

### 4. CONFLICT OF INTEREST

M.J. alleges the Board erred in allowing the Lancaster County Public Defender to represent him because he claims the office failed to protect his interests in the "1996 matter." The Board told M.J. it did not have the ability to appoint alternative counsel for him because the public defender had been appointed by the district court. The Board did allow M.J. to represent himself but, in addition, the public defender was also appointed standby counsel. Within minutes of the start of the hearing M.J. deferred without objection to the public defender presenting the case. M.J. did not contribute to the presentation of any evidence or make any objections, and he did not appear to have any control over the case. There is no evidence in the record that the public defender's management of the case was in violation of M.J.'s wishes or without his consent. Before the hearing had progressed beyond three pages of typed transcript, the public defender had asked leave to voir dire the expert witness, which was granted, without any comment by M.J. See *State v. Green*, 238 Neb. 328, 470 N.W.2d 736 (1991) (standby counsel should be available to take over representation if termination of self-representation is necessary). Additionally, the public defender represented M.J. in proceedings before both the district court and this court. If a conflict existed, and we see no evidence of any, M.J. effectively waived any opportunity to raise this issue as error since he appeared to delegate his representation to the public defender.

### 5. INADMISSIBLE EVIDENCE

On appeal, M.J. complains that the admission of his prior convictions was error because they happened more than 10 years ago and therefore were not recent enough to have any evidentiary value. M.J. did not raise this issue before the district court nor did the district court consider the question. Therefore, we will not consider it here. See *State v. Feiling*, 255 Neb. 427, 585 N.W.2d 456 (1998) (in reviewing decisions of district court, higher appellate court will only consider errors specifically assigned in appeal to district court and again assigned as error in appeal to higher appellate court).

## VI. CONCLUSION

For the foregoing reasons, we affirm the order of the district court.

AFFIRMED.